CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
OCT 3 1 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

| | |
|---|---|
| JULIE L. HOLMES, | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 7:07cv543 |
| COMMISSIONER OF SOCIAL SECURITY, | ) By: Michael F. Urbanski |
| | ) United States Magistrate Judge |
| Defendant | ) |

## REPORT AND RECOMMENDATION

The issue in this social security disability appeal is whether the Commissioner appropriately considered the opinions of a treating physician, Dr. John F. Gaylord, an internal medicine specialist, and consulting psychologist, Dr. Robert C. Miller, who performed some testing on plaintiff, Julie Holmes ("Holmes"), at the request of her counsel. Dr. Gaylord treated Holmes for many years, and completed several forms opining that Holmes was incapable of working an eight hour day due to her physical impairments. At the administrative hearing, a medical expert testified that he did not have Dr. Gaylord's office records, and thus had no objective documentation to support Dr. Gaylord's disability opinion. It appears from the record that the medical expert either did not have or could not read Dr. Gaylord's treatment notes and therefore could not form any judgment as to whether Dr. Gaylord's disability opinion was supported by these notes or not. Although additional treatment records from Dr. Gaylord were provided to the ALJ after the hearing, there is no indication that the ALJ provided those records to the medical expert and sought his input after their review. Because the ALJ's decision is founded on the opinion of the medical expert, and the medical expert did not have the ability to

fully evaluate Dr. Gaylord's treatment notes, this case must be remanded for further administrative consideration.

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

2

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments,

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

3

to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Holmes claims disability based on a physical impairment to her back, leg and hip and a psychological impairment. Holmes claims a period of disability insurance benefits and supplemental security income as of an onset date of September 20, 2005.

Holmes was treated by Dr. Gaylord over a period of more than five years. On August 4, 2005, Dr. Gaylord wrote that "Julie Holmes is an unfortunate forty-five year old lady who suffers from severe chronic back, hip and left leg pain related to structural spinal problems. She has sustained a compression fracture of 1st lumbar vertebra and has associated Schmorl's node[2] intevertebral disc herniation defect." (R. 197) Dr. Gaylord opined that "patient is permanently disabled and unable to do meaningful work. She must change positions frequently, cannot sit or stand for protected (sic) periods and is unable to lift, climb, bend, stoop or do repetitive tasks with hands or feet." (R. 197)

In early 2006, Holmes had a laminectomy/foraminotomy procedure at L4-L5 performed by Raymond V. Harron, a neurosurgeon. Following the surgery, Holmes reported to Dr. Harron marked improvement in her left leg pain. (R. 223, 225) Holmes progressed positively, but slowly, on physical therapy, with her therapist reporting increased range of motion and decreased pain, but still some stiffness, in her back. (R. 222) Dr. Harron also assessed Homes for neck and right shoulder/arm pain and had an MRI done on May 15, 2006. The MRI showed early mild disc degeneration and posterior disc bulging at multiple levels, starting at C3-C4 and going down

---

[2]A Schmorl's node is "an irregular or hemispherical bone defect in the upper or lower margin of the body of the vertebra." Dorland's Illustrated Medical Dictionary, 30th ed. (2003), at 1270.

4

to and including C6-C7. There was no evidence of disc herniation, spinal stenosis or focal abnormality causing nerve root compression, and Dr. Harron recommended no cervical surgery. (R. 218) Dr. Harron ordered physical therapy for Holmes' neck, which provided her little relief. Dr. Harron believed the pain to be discogenic and discussed with Holmes a cervical discogram. Apparently this procedure was not performed due to Holmes' inability to pay for it. (R. 218, 338) A lumbar spine MRI performed on August 15, 2006 did not show any recurrent disc herniation or nerve root compression. (R. 337) Dr. Harron recommended a trochanteric bursal injection to relieve pain in that area which was performed in December, 2006. (R. 337, 383)[3]

Throughout the period Holmes was seen by Dr. Harron, she continued to be followed by Dr. Gaylord. Unfortunately, most of his notes are handwritten and very difficult to decipher.

Shortly before the administrative hearing, on August 21, 2006, Dr. Gaylord completed physical and mental assessments of Holmes' ability to work. Dr. Gaylord found that Holmes could lift/carry less than 10 pounds occasionally, stand/walk less than 3 hours and sit less than 3 hours. (R. 209-10) Dr. Gaylord found Holmes to be in the good or fair categories in terms of her mental assessment, with the exception of functioning independently. (R. 211-12) Dr. Gaylord noted that Holmes' daughter does her household chores, lifting and driving at present. (R. 211)

An administrative hearing was held on September 29, 2006, after which the ALJ found that Holmes suffered from the following severe impairments: degenerative disc disease, osteoarthritis of the lumbar spine, and depression/anxiety. (R. 19) The ALJ determined that Holmes retained the residual functional capacity to perform a limited range of light work. In so

---

[3]Holmes had earlier received such an injection from Dr. Dallas P. Crickenberger on March 14, 2005. (R. 331-33)

5

concluding, the ALJ adopted the opinion of Dr. H.C. Alexander, a medical expert testifying at the hearing. At the hearing, Dr. Alexander commented on Dr. Gaylord's opinion that Holmes was unable to perform a full day's work by noting that he could not find anything legible in Dr. Gaylord's notes to support this opinion. Upon questioning by the ALJ, Dr. Alexander explained that "the main point is that without his office records I don't have any . . . documentation of objective findings to support that MSS."[4] (R. 425) Both the ALJ and Dr. Alexander agreed that Dr. Gaylord's notes were "basically illegible." (R. 425)

The issue of the support for Dr. Gaylord's opinions was further addressed by the ALJ at the close of the hearing on September 29, 2006. Based on the testimony of the Vocational Expert ("VE"), the ALJ stated that "I will stipulate that if I find Dr. Gaylord's notes as the treating physician substantiate his RFC that there are no jobs she can do." (R. 432) Addressing the claimant, the ALJ added "I do need to get Dr. Gaylord's report before making a determination in your case." (R. 433)

On October 4, 2006, Holmes submitted additional medical records from Dr. Gaylord for the period November 29, 2005 to August 21, 2006. (R. 294-316) Dr. Gaylord's handwritten notes are admittedly difficult to read, but appear to reflect consistent complaints of back pain. Included in these records were a series of x-rays and MRIs of Holmes' spine, none of which support her disability claim. The MRI of her lumbar spine dated August 15, 2006 showed an old Schmorl's node at L1, which was unchanged, and an otherwise normal appearing lumbar spine. (R. 308) An MRI of Holmes' thoracic spine taken the same day was likewise normal. (R. 309) X-rays of Holmes' thoracic spine were taken on April 24, 2006 and August 10, 2006 and were

---

[4] By MSS, Dr. Alexander is referring to Dr. Gaylord's opinion which he terms a medical source statement.

6

compared. Both reports showed no acute disease. (R. 310, 314) An April 24, 2006 x-ray of the cervical spine reported the same. An MRI of the cervical spine done on May 15, 2006 revealed "[f]indings consistent with early/mild intervertebral disk degeneration and posterior anular bulging are observed at multiple levels from C3-4 caudad to and including C6-7. No evidence of disk herniation, spinal stenosis or focal abnormality referable to the cervical/upper thoracic cord is identified. The vertebrae appear intact and in satisfactory alignment." (R. 311)

### III.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide her reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision

7

for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In the decision, the ALJ gave little weight to Dr. Gaylord's opinion reflected in his August 21, 2006 medical assessment, finding that "it is not supported by medical signs and laboratory findings or adequate explanation and it is inconsistent with the record as a whole. The record clearly indicates that the February 2006 surgery successfully eliminated any nerve root compression and that claimant's condition has substantially improved following the surgery." (R. 22-23)

While the ALJ's assessment may well be true, it is difficult to see how the ALJ could reach such a conclusion when neither he nor Dr. Alexander were able to read the treating physician's notes. In other words, if the ALJ did not know what an important part of the record, i.e., the treating physician's notes, said, how could the ALJ find that Dr. Gaylord's disability opinion was "inconsistent with the record as a whole?" Further, Dr. Alexander's "main point" at the administrative hearing was that he did not have Dr. Gaylord's medical records to see whether his opinion was supported by objective findings. (R. 425) While certain of these records were provided to the ALJ following the hearing, there is no suggestion in the record that they were ever provided to Dr. Alexander for his review or that the ALJ consulted Dr. Alexander about these records.

Holmes argues that under these circumstances the ALJ was obligated at the very least to recontact the treating physician. Social security regulations provide that an ALJ must recontact a

8

treating source when the medical evidence of record is inadequate to make a disability determination, 20 C.F.R. § 404.1512(e), the source provides an opinion on an issue reserved to the Commissioner, SSR 96-5p, or the source's treatment notes are incomplete, SSR 85-16. Here, the medical expert at the hearing commented that his "main point," (R. 425) was that he did not have Dr. Gaylord's office records, and the ALJ noted that the "other problem" that the office notes of Dr. Gaylord that were in the record were "basically illegible." (R. 425) The ALJ further noted at the close of the hearing the need to review Dr. Gaylord's notes before a decision was made, but there is no suggestion in the record that either the ALJ performed such a review or that these additional records were provided to the medical expert for review and comment. (R. 432-33)

Under these unusual circumstances, the ALJ should have recontacted the treating source to clarify the issue. SSR 85-16 provides that "[w]hen medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain more detailed information. Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC before obtaining evidence from any other source on a consultative basis." The court in Bryant v. Astrue, 2007 WL 2377079 at *6 (D. Kan. 2007), considered the issue of whether a treating source should be recontacted when medical records forming the basis for his opinion are illegible. The court determined that the circumstances in that case required the ALJ to recontact the treating source so that the basis for his disability opinion could be evaluated. The court reasoned as follows:

> Furthermore, the largely illegible nature of the treatment notes also requires that Dr. Amos be recontacted. As noted in SSR 96-5p, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make

9

> every reasonable effort to recontact the source for clarification of the
> reasons for the opinion.

The same is true here as well. Indeed, it would have been a relatively simple matter for the ALJ to contact Dr. Gaylord for translation of his notes or to obtain a typed copy of his notes. Given the medical expert's testimony and the ALJ's own comments on the record regarding the importance of Dr. Gaylord's office notes, contacting Dr. Gaylord was a reasonable effort that was not undertaken here. Under these circumstances, it is manifestly unjust to make a disability decision on the basis of the inability to read the treating physician's notes.

## IV.

No remand is necessary, however, regarding the claimed psychological impairment. The record contains a Psychological Evaluation by Dr. Robert C. Miller, dated October 17, 2006, as well as an assessment of Holmes' ability to do work-related activities from a mental perspective. (R. 317-23) At the request of Holmes' counsel, she was tested by a consulting psychologist, Dr. Miller, who provided an evaluation, (R. 317-21), and completed a form regarding his assessment of Holmes' mental ability to do work related activities. (R. 322) The ALJ gave little weight to the psychological assessment and evaluation done by Dr. Miller, reasoning that "Dr. Miller is not a treating physician, his opinions are substantially inconsistent with Dr. Gaylord's opinions regarding claimant's mental abilities, and they are inconsistent with the record as a whole showing that claimant has not complained of or sought treatment for any mental impairments except in preparation for the hearing in this case." (R. 23) Given Dr. Gaylord's assessment of Holmes' mental impairments and her lack of any treatment for any mental issue, there is substantial evidence to support the ALJ's rejection of Dr. Miller's inconsistent psychological evaluation.

**V.**

Following the ALJ's decision on November 17, 2006, Holmes submitted certain additional materials to the Appeals Council. Included in this information were forms completed by Dr. Gaylord regarding Holmes' physical and mental ability to work on April 9, 2007. On his mental assessment, Dr. Gaylord rated Holmes primarily in the "Good" range, with a few higher and a few lower values. He checked Holmes' ability to deal with work stresses as only "Fair," and noted that she had only a fair ability to maintain attention and concentration "because patient has to take particularly sedating medicines and because pain interferes with patient's sleep." (R. 357) Dr. Gaylord's mental assessment submitted to the Appeals Council is consistent with his earlier assessment and does not suggest the existence of any mental impairment that would preclude substantial gainful activity.

As regards the April 6, 2007 physical assessment, Dr. Gaylord found that Holmes could lift up to 10 pounds occasionally and up to 2 pounds frequently. He noted that she could stand/walk less than two hours in an eight hour work day and could stand less than 20 minutes without interruption. Dr. Gaylord noted that she could sit for a total of 6 hours, but could not sit in one position for any longer than 20 minutes. Dr. Gaylord found that Homes could not climb, stoop, kneel, crouch, or crawl. Dr. Gaylord checked that the physical functions of reaching and feeling were affected by her impairment, but not handling or push/pulling. He also noted that seeing, hearing and speaking were affected, but there is nothing to support such an assessment. (R. 360) This assessment is fairly close to his earlier one, and there is nothing in it to suggest a contrary result.

11

Thus, the materials submitted to the Appeals Council, when considered as required under Wilkins v. Secretary, DHHS, 953 F.2d 93, 96, (4th Cir. 1991), do not alter the recommendation that this case be remanded for consideration of Dr. Gaylord's disability opinions regarding Holmes' physical impairments in light of his office records.

## VI.

At the end of the day, Holmes may not be able to meet her burden of establishing that she is totally disabled. Indeed, the objective x-rays and MRIs submitted to the ALJ after the administrative hearing on October 4, 2006 appear not to document the existence of physical impairments rendering Holmes incapable of any substantial gainful activity. However, it is not the province of a reviewing court to make a disability decision. Rather, it is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. Here, plainly, the Commissioner's decision is not so supported as neither the medical expert nor the ALJ were able to review the treating physician's notes to ascertain whether or not they were consistent with his disability opinion.

Accordingly, it is **RECOMMENDED** that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative consideration. On record, the Commissioner should recontact Dr. Gaylord about those portions of his office records which are illegible so that the Commissioner may fully evaluate his disability opinions in light of those records. Further, once this information is obtained, it is **RECOMMENDED** that the Commissioner be directed to provide this information to a medical expert, or consultative examination, so that a fully supported assessment of the treating source's disability opinion may be obtained.

The Clerk is directed to transmit the record in this case to James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court also is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 31st day of October, 2008.

Michael F. Urbanski
United States Magistrate Judge